TITAN INSURANCE COMPANY v STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY

Docket No. 301214. Submitted January 10, 2012, at Detroit. Decided
March 27, 2012, at 9:00 a.m. Leave to appeal denied, 493 Mich 858.

Titan Insurance Company brought an action in the Genesee Circuit
Court against State Farm Mutual Automobile Insurance Company,
seeking a declaratory judgment regarding the obligations of the
parties to pay personal protection insurance (PIP) benefits to
Kenneth Curler for injuries he sustained in an accident that
occurred when the motorcycle he was riding collided with an
automobile. Neither Curler nor the operator of the automobile was
covered by a no-fault policy applicable to Curler's injuries. The
Michigan Assigned Claims Facility selected Titan to administer
the payment of PIP benefits to Curler and Titan paid the benefits.
After discovering that Edward Shreve, Jr., appeared to be the last
titled owner of the motorcycle and that Shreve was insured under
an automobile policy issued by State Farm, Titan filed its com-
plaint, seeking a declaration that Curler was entitled to benefits
under State Farm's policy issued to Shreve and that State Farm
was required to reimburse Titan for the benefits paid to Curler.
Titan sought summary disposition, attaching to its supporting
brief a copy of a Michigan certificate of title for the motorcycle
showing the signatures of Curler and Shreve and the date of June
18, 2006, the day following the accident. Titan acknowledged that
Shreve had stated in a deposition that on or about June 14, 2006,
he had sold the motorcycle to a person named "Jay" and had signed
and surrendered the title and the motorcycle to Jay at that time.
Titan contended that at the time of the accident Shreve was the
owner or registrant of the motorcycle and, therefore, under MCL
500.3114(5), Curler was entitled to benefits from State Farm,
Shreve's insurer. State Farm filed a counter-motion for summary
disposition, contending that because Shreve had transferred the
title to Jay before the accident, Shreve was not the owner of the
motorcycle at the time of the accident, citing MCL 257.233(9), and
Shreve's liability ended when he signed the title and transferred
possession of the motorcycle to Jay. The court, Geoffrey L. Nei-
thercut, J., granted summary disposition in favor of State Farm,
concluding that Shreve had assigned the title to Jay, who then

assigned it to Curler and, because Shreve signed the certificate of
title and delivered the motorcycle to Jay before the accident
occurred, State Farm had no liability. Titan appealed as of right.
The Court of Appeals, ZAHRA, P.J., and O'CONNELL and FORT HOOD,
JJ., in an unpublished opinion per curiam, issued January 8, 2009
(Docket No. 282860), reversed the trial court's order and re-
manded the matter for further proceedings after holding that the
trial court erred by determining that there was no genuine issue of
material fact regarding Shreve's transfer of the title to Jay before
the accident. The Court of Appeals then denied Titan's motion for
reconsideration or clarification that alleged that Shreve was the
titled owner at the time of the accident and remained the regis-
trant, so State Farm was responsible for reimbursing the PIP
benefits Titan paid under MCL 500.3114(5). On remand, Titan
moved for summary disposition, contending that while genuine
issues of material fact existed with regard to the ownership of the
motorcycle at the time of the accident, there was no question that
under MCL 257.234 Shreve remained the registrant at the time of
the accident because Shreve had left his unexpired license plate on
the motorcycle when he sold the motorcycle to Jay and, after
buying the motorcycle from Jay, Curler did not attempt to obtain
a new plate until the day after the accident. State Farm argued
that it was entitled to summary disposition because Shreve had
testified that he no longer had an insurable interest in the
motorcycle and Curler had confirmed that the sale and the
transfer of the motorcycle and the title occurred well before the
accident occurred. State Farm also argued that Titan's claim that
Shreve remained the registrant had been rejected by implication in
the unpublished opinion per curiam of the Court of Appeals. The
trial court granted summary disposition in favor of State Farm on
the basis that MCL 257.233(9) says that the effective date of the
transfer of interest in a vehicle is the date of signature, or the
assignment of the certificate of title. The trial court denied Titan's
subsequent motion for reconsideration, noting that there was no
genuine issue of material fact that Shreve no longer had an
insurable interest in the motorcycle. Titan appealed as of right.

The Court of Appeals *held*:

1. The terms "owner" and "registrant" as used in the no-fault
act are not synonymous and represent separate categories of
individuals.

2. An unexpired registration plate affixed to a vehicle serves as
presumptive evidence that the vehicle is validly registered with the
Secretary of State and that it carries the statutorily mandated
no-fault insurance. It logically follows that to destroy that pre-

sumption, the appropriate course of action after the sale of a vehicle is for the seller to remove the registration plate and the certificates of registration and insurance from the vehicle. When a seller fails to remove an unexpired registration plate from the vehicle a reasonable inference can be made that the seller voluntarily remains the insuring registrant of the vehicle.

3. Although Shreve may have canceled his policy of insurance on the motorcycle three months before the sale, there is no evidence that the cancellation was done in anticipation of the sale of the motorcycle and it appears that the insurance was canceled merely because Shreve had no intention of using the motorcycle at that time. Moreover, while Shreve apparently removed the certificates of registration and insurance from the motorcycle before he relinquished possession of the motorcycle, the fact remains that Shreve failed to remove his unexpired license plate from the motorcycle. A reasonable inference can be made that Shreve voluntarily remained the insuring registrant. Shreve's insurer, State Farm, was therefore obligated to pay PIP benefits in this case.

Reversed.

1. INSURANCE — NO-FAULT INSURANCE — WORDS AND PHRASES — OWNER — REGISTRANT.

The terms "owner" and "registrant" as used in the no-fault insurance act are not synonymous and represent separate categories of individuals. (MCL 500.3101 *et seq.*).

2. MOTOR VEHICLES — REGISTRATION PLATES — CERTIFICATES OF REGISTRATION AND INSURANCE — PRESUMPTION OF VALID REGISTRATION — INFERENCE OF VOLUNTARILY REMAINING INSURING REGISTRANT.

An unexpired registration plate affixed to a vehicle serves as presumptive evidence that the vehicle is validly registered with the Secretary of State and that it carries the statutorily mandated no-fault insurance; the appropriate course of action to destroy that presumption after the sale of the vehicle is for the seller to remove the registration plate and the certificates of registration and insurance from the vehicle; a reasonable inference can be made that the seller voluntarily remained the insuring registrant of the vehicle when the seller failed to remove an unexpired registration plate from the vehicle.

*Law Offices of Ronald M. Sangster, PLLC* (by *Ronald M. Sangster, Jr.*), for plaintiff.

*Bensinger, Cotant & Menkes, P.C.* (by *Dale L. Arndt*), for defendant.

Before: JANSEN, P.J., and WILDER and K. F. KELLY, JJ.

PER CURIAM. Plaintiff, Titan Insurance Company, appeals as of right an order granting summary disposition in favor of defendant, State Farm Mutual Automobile Insurance Company, in this dispute over the priority of insurers to pay personal protection insurance (PIP) benefits. We reverse.

### I. FACTS AND PROCEDURAL HISTORY

This is the second time this case has been before this Court. The facts were set forth in *Titan Ins Co v State Farm Mut Auto Ins Co*, unpublished opinion per curiam of the Court of Appeals, issued January 8, 2009 (Docket No. 282860), pp 1-2 (*Titan I*):

> This case involves a dispute between plaintiff and defendant to determine which insurer has priority for the payment of no-fault benefits to Kenneth Curler. On June 17, 2006, Curler was injured when the motorcycle he was riding collided with a vehicle. Neither Curler nor the operator of the vehicle was covered by a no-fault policy applicable to Curler's injuries. The Michigan Assigned Claims Facility selected plaintiff to administer payment of . . . (PIP) benefits to Curler. Plaintiff paid PIP benefits to Curler.
>
> Plaintiff discovered that Edward Shreve, Jr., seemingly was the last titled owner of the motorcycle that Curler was riding when the accident occurred, and that at that time Shreve was insured under an automobile policy issued by defendant. Plaintiff filed a complaint for declaratory relief, seeking a declaration that Curler was entitled to benefits under defendant's policy issued to Shreve, and that defendant was required to reimburse plaintiff for the benefits paid to Curler.

Plaintiff sought summary disposition pursuant to MCR 2.116(C)(10). Plaintiff attached to its brief in support of its motion a copy of a State of Michigan Certificate of Title showing the signatures of Curler and Shreve and the date of June 18, 2006. Plaintiff acknowledged that in his deposition, Shreve contended that on or about June 14, 2006, he sold the motorcycle to a person named Jay, last name unknown, for cash, and signed and surrendered the title and the motorcycle to Jay at that time. Shreve asserted that he had no documentation of the sale to Jay. Plaintiff contended that at the time of the accident Shreve was the owner or registrant of the motorcycle; therefore, under MCL 500.3114(5), Curler was entitled to benefits from defendant, Shreve's insurer.

Defendant filed a counter-motion for summary disposition pursuant to MCR 2.116(C)(10) and (I)(2). Defendant asserted that Shreve's deposition testimony established that he had transferred the title to the motorcycle to Jay prior to Curler's accident, and that therefore, Shreve could not be deemed an owner of the motorcycle at the time the accident occurred. MCL 257.233(9). Defendant contended that Jay was responsible for obtaining a new certificate of title, MCL 257.234(1), and that Shreve's liability ended when he signed the titled [sic] and transferred possession of the motorcycle to Jay.

The trial court denied summary disposition for plaintiff and granted summary disposition in favor of defendant. The trial court found that Shreve assigned the title to Jay, who then assigned it to Curler. The trial court concluded that because Shreve signed the certificate of title and delivered the motorcycle to Jay before the accident occurred, Shreve's insurer, defendant, had no liability.

Titan appealed. At issue on appeal was the interpretation of MCL 500.3114(5), which provides:

A person suffering accidental bodily injury arising from a motor vehicle accident which shows evidence of the involvement of a motor vehicle while an operator or pas-

senger of a motorcycle shall claim personal protection insurance benefits from insurers in the following order of priority:

(a) The insurer of the owner or registrant of the motor vehicle involved in the accident.

(b) The insurer of the operator of the motor vehicle involved in the accident.

(c) The motor vehicle insurer of the operator of the motorcycle involved in the accident.

(d) The motor vehicle insurer of the *owner or registrant* of the motorcycle involved in the accident. [Emphasis added.]

Also at issue was MCL 257.233(9), which provided at the time of the accident:

Upon the delivery of a motor vehicle and the transfer, sale, or assignment of the *title or interest* in a motor vehicle by a person, including a dealer, the effective date of the transfer of title or interest in the vehicle shall be the date of execution of either the application for title or the assignment of the certificate of title. [Emphasis added.]

This Court reversed the trial court's order and remanded for further proceedings after holding that the trial court erred by determining that there was no genuine issue of fact regarding Shreve's transfer of title to Jay before the accident. Shreve's deposition testimony was relied on to support this Court's conclusion:

[T]he certificate of title contains Shreve's signature, Curler's signature, and the date of June 18, 2006, which is one day after the accident. At a minimum, a question of fact exists regarding the date on which Shreve transferred the title to the motorcycle, and to whom. Pursuant to MCL 257.233(9) as it read at the time of the accident, "the effective date of [the] transfer of title or interest" in the motorcycle was the date of execution of the assignment of the title. Evidence exists that that date was June 18, 2006, the day after the accident occurred. If the title was not

transferred until that date, Shreve was the titled owner of the motorcycle on June 17, 2006. Under those circumstances, defendant would be liable for payment of PIP benefits to Curler. [*Titan I*, unpub op at 3.]

Titan filed a motion for reconsideration or clarification. It argued that Shreve was the titled owner of the motorcycle at the time of the accident, as shown by the authenticated certificate of title, which listed the sale date as June 18, 2006—the day *after* the accident. Titan believed that physical possession of the motorcycle was irrelevant. Additionally, Titan argued that there was no question that Shreve remained the *registrant* of the motorcycle and that State Farm was responsible for reimbursing PIP benefits under MCL 500.3114(5)(d). This Court denied Titan's motion. *Titan Ins Co v State Farm Mut Auto Ins Co*, unpublished order of the Court of Appeals, entered February 26, 2009 (Docket No. 282860).

The matter returned to the trial court and Curler was deposed on May 6, 2010. On July 27, 2010, Titan again filed a motion for summary disposition, arguing that while genuine issues of fact remained with regard to the ownership of the motorcycle at the time of the accident, there was no question that Shreve remained the "registrant" at the time of the accident because he had left his license plate on the motorcycle when he sold the motorcycle to Jay. After buying the motorcycle from Jay, Curler did not attempt to obtain a new plate until June 18, 2006—the day *after* the accident. Titan argued that the registration of Shreve's plate was never canceled and, therefore, Shreve remained the registrant under MCL 257.234.

State Farm argued that it, not Titan, was entitled to judgment as a matter of law because not only did Shreve testify that he no longer had an insurable interest in the

motorcycle, but Curler confirmed that the sale and transfer of the motorcycle and the title occurred well before the accident took place. Additionally, State Farm argued that Titan's claim that Shreve remained the registrant had been rejected by implication in the Court of Appeal's decision that reversed the order of the trial court and remanded the matter for further proceedings. State Farm argued that its liability for payment of PIP benefits was terminated upon Shreve's assignment and transfer of the title.

A hearing took place on August 30, 2010. After hearing arguments, the trial court stated:

> The Court is intrigued by *Clevenger* [*v Allstate Ins Co*, 443 Mich 646; 505 NW2d 553 (1993)]. But the problem in this case that we have is; well we don't have all the evidence. Because we don't have evidence from Shreve's deposition that he left the registration or proof of insurance with the motor vehicle, or the plate; that's something that, ah, *Clevenger* was talking about. So at this point and time we're actually speculating about what his interest is.
>
> And frankly I'm buying into State Farm's argument that that statue [sic] [MCL] 257.233(9) says the effective date of the transfer of interest in the motor vehicle is the date of signature, or the assignment of the certificate of title. So I vote for State Farm today.

The trial court denied Titan's subsequent motion for reconsideration, stating: "To put it succinctly, the Court of Appeals remanded the case back for the determination of two factual issues. First, what was the date the title was transferred? Second, to whom was it transferred?" The trial court noted that "even if this Court were to assume that [Shreve] left his plate on the motorcycle when he sold it to Mr. [Jay] Wilson, that single act does not rise to the standard provided by *Allstate* [*Ins Co v State Farm Mut Auto Ins Co*, 230 Mich App 434; 584 NW2d 355 (1998)] and *Clevenger*. In

*Clevenger*, in addition to leaving the plate on the vehicle, the seller also left the registration and the certificate of insurance in the vehicle." The trial court stated that because Shreve had testified that he had canceled the insurance on the motorcycle in March 2006, it was "highly improbable" that he intended to maintain an insurable interest. The trial court concluded that there was no genuine issue of material fact that Shreve no longer had an insurable interest in the motorcycle.

Titan again appeals as of right.

## II. STANDARD OF REVIEW

A trial court's decision to grant a motion for summary disposition pursuant to MCR 2.116(C)(10) is reviewed de novo to ascertain whether the movant is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). We review the record in a light most favorable to the nonmoving party to determine whether the evidence established the existence of a genuine issue of material fact for trial. *Id*. We review issues of law, including questions of statutory construction, de novo. *White v Harrison-White*, 280 Mich App 383, 387; 760 NW2d 691 (2008).

This Court's primary task in construing a statute is to discern and give effect to the intent of the Legislature. *Shinholster v Annapolis Hosp*, 471 Mich 540, 548-549; 685 NW2d 275 (2004). In so doing, the Court must begin with the language of the statute, ascertaining the intent that may reasonably be inferred from its language. *Lash v Traverse City*, 479 Mich 180, 187; 735 NW2d 628 (2007). It is axiomatic that the words contained in the statute provide the most reliable evidence of the Legislature's intent. *Kinder Morgan Mich, LLC v City of Jackson*, 277 Mich App 159, 163; 744 NW2d 184 (2007). The Legislature is presumed to have intended the meaning it plainly

expressed and clear statutory language must be enforced as written. *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 219; 731 NW2d 41 (2007); *Fluor Enterprises, Inc v Dep't of Treasury*, 477 Mich 170, 174; 730 NW2d 722 (2007).

If the statutory language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written. *Lash*, 479 Mich at 187; *Rose Hill Ctr, Inc v Holly Twp*, 224 Mich App 28, 32; 568 NW2d 332 (1997). Only if a statute is ambiguous is judicial construction permitted. *Detroit City Council v Detroit Mayor*, 283 Mich App 442, 449; 770 NW2d 117 (2009).

Apparently plain statutory language can be rendered ambiguous by its interaction with other statutes. *Ross v Modern Mirror & Glass Co*, 268 Mich App 558, 562; 710 NW2d 59 (2005). Statutes that relate to the same subject or share a common purpose are *in pari materia* and must be read together as one law, even if they contain no reference to one another and were enacted on different dates. *State Treasurer v Schuster*, 456 Mich 408, 417; 572 NW2d 628 (1998); *McNeil v Charlevoix Co*, 275 Mich App 686, 701; 741 NW2d 27 (2007), aff'd 484 Mich 69 (2009). The object of the *in pari materia* rule is to give effect to the legislative purpose as found in harmonious statutes. *Walters v Leech*, 279 Mich App 707, 710; 761 NW2d 143 (2008). Statutes relate to the same subject if they relate to the same person or thing or the same class of persons or things. *Id.*

### III. SHREVE'S STATUS AS "OWNER OR REGISTRANT"

Titan argues that, in allowing his license plate to remain on the motorcycle and in failing to cancel his registration, Shreve remained the motorcycle's "registrant." We agree.

MCL 500.3114(5), a subsection of the motor vehicle personal and property protection chapter of Michigan's Insurance Code, MCL 500.3101 *et seq.*, provides:

> A person suffering accidental bodily injury arising from a motor vehicle accident which shows evidence of the involvement of a motor vehicle while an operator or passenger of a motorcycle shall claim personal protection insurance benefits from insurers in the following order of priority:
>
> (a) The insurer of the owner or registrant of the motor vehicle involved in the accident.
>
> (b) The insurer of the operator of the motor vehicle involved in the accident.
>
> (c) The motor vehicle insurer of the operator of the motorcycle involved in the accident.
>
> (d) The motor vehicle insurer of the *owner or registrant* of the motorcycle involved in the accident. [Emphasis added.]

There is no dispute that, at the time of the accident, Curler and the driver of the other vehicle involved in the accident were uninsured. At issue is whether, by leaving the plates on the motorcycle when he sold it to "Jay," Shreve remained the registrant of the motorcycle. Titan argues that the use of the disjunctive "or" requires a finding that Shreve's insurer, State Farm, was liable for the payment of PIP benefits. The Legislature is presumed to know the rules of grammar. *Greater Bethesda Healing Springs Ministry v Evangel Builders & Constr Mgrs, LLC*, 282 Mich App 410, 414; 766 NW2d 874 (2009). While, generally, "or" is a disjunctive term indicating a choice between alternatives and "and" means in addition to, the terms are often misused. *Amerisure Ins Co v Plumb*, 282 Mich App 417, 428; 766 NW2d 878 (2009). Nevertheless, the words are not interchangeable and their literal meanings should be

followed if they do not render the statute dubious. *Id.* at 428-429; *Root v Ins Co of North America*, 214 Mich App 106, 109; 542 NW2d 318 (1995).

The Insurance Code defines an "owner" as any of the following:

> (*i*) A person renting a motor vehicle or having the use thereof, under a lease or otherwise, for a period that is greater than 30 days.
>
> (*ii*) A person who holds the legal title to a vehicle, other than a person engaged in the business of leasing motor vehicles who is the lessor of a motor vehicle pursuant to a lease providing for the use of the motor vehicle by the lessee for a period that is greater than 30 days.
>
> (*iii*) A person who has the immediate right of possession of a motor vehicle under an installment sale contract. [MCL 500.3101(2)(h).]

Unfortunately, a "registrant" is not as clearly defined in the Insurance Code. In fact, it is only referred to in the negative. MCL 500.3101(2)(i) provides that a " '[r]egistrant' " does not include a person engaged in the business of leasing motor vehicles who is the lessor of a motor vehicle pursuant to a lease providing for the use of the motor vehicle by the lessee for a period that is greater than 30 days."

Citing the Michigan Vehicle Code, MCL 257.1 *et seq.*, Titan argues that there are very limited ways in which to cancel a vehicle's registration. Registration automatically expires on the owner's birthday. MCL 257.226(1). A new registration is created only upon receipt by the Secretary of State of an endorsed certificate of title and application for transfer of registration. MCL 257.237(1). If a transfer does not occur within 15 days, the vehicle is considered to be without registration. MCL 257.234(3). If the owner transfers the title to the vehicle, he or she is required to remove the registration plates and transfer them, or

retain them for subsequent transfer, to another vehicle that the owner owns. MCL 257.233(1). Titan argues that Shreve continued to be the registrant because he did not remove the plate, did not transfer the plate to another vehicle that he owned, and did not transfer the plate to a family member. Additionally, there was no "deregistration" because 15 days had not elapsed between the time of the sale and the accident, nor did registration lapse upon Shreve's birthday, which occurred after the accident.

Rather than directly addressing whether Shreve remained the registrant, State Farm argues that Shreve did not maintain an "insurable interest" in the motorcycle, citing MCL 257.233(8) and (9), which, at the time in question,[1] provided:

> (8) The owner shall indorse on the certificate of title as required by the secretary of state an assignment of the title with warranty of title in the form printed on the certificate with a statement of all security interests in the vehicle or in accessories on the vehicle and deliver or cause the certificate to be mailed or delivered to the purchaser or transferee at the time of the delivery to the purchaser or transferee of the vehicle. The certificate shall show the payment or satisfaction of any security interest as shown on the original title.

> (9) Upon the delivery of a motor vehicle and the transfer, sale, or assignment of the title or interest in a motor vehicle by a person, including a dealer, the effective date of the transfer of title *or interest in the vehicle* shall be the date of execution of either the application for title or the assignment of the certificate of title. [Emphasis added.]

State Farm points out that the obligation to obtain a new certificate of title lies with the purchaser, not the seller, and that, by canceling the insurance and relin-

---

[1] MCL 257.233 was amended after the accident occurred.

quishing possession of the motorcycle and title thereto, Shreve had no remaining interest in the motorcycle after the sale. However, this argument does not address Shreve's status as a registrant.

Both parties cite *Clevenger v Allstate Ins Co*, 443 Mich 646; 505 NW2d 553 (1993). In *Clevenger*, Douglas Preece purchased his aunt's Pontiac for $100. The aunt, JoAnn Williams, signed her name to the certificate of title and gave the vehicle to Preece. Preece testified that because it was the weekend, Williams agreed that Preece could drive with her registration plate, registration, and insurance until Monday when the Secretary of State office opened. Thus, when Preece left Williams's home, the registration plate was attached to the vehicle and the certificates of registration and insurance were in the glove compartment. *Id.* at 648. Preece was involved in a head-on collision on the way home and the other driver, Clifford Clevenger, was injured. Clevenger received first-party personal injury protection benefits from his own insurer and then sued Williams's insurer, Allstate Insurance. Though Williams had canceled insurance on the vehicle, she did not do so until four days after the accident and at that time she was not aware that an accident had even taken place. *Id.* at 649. The trial court found that Allstate had a duty to defend and indemnify. This Court reversed, finding that a bona fide sale occurred, that Williams was no longer the owner of the vehicle, and that she was relieved of any liability. *Id.* at 650. Our Supreme Court reversed, rejecting the argument that because Williams no longer held title she no longer held an "insurable interest" in the car. The Court reiterated that the terms " 'owner' and 'registrant,' as used in the no-fault act, are not synonymous and represent separate categories of individuals." *Id.* at 658. Our Supreme Court held:

We read these provisions of the vehicle code and the no-fault insurance act in pari materia as indicating that an unexpired registration plate affixed to the vehicle serves as presumptive evidence that the vehicle is validly registered with the Secretary of State, and that it carries the statutorily mandated no-fault automobile insurance. It logically follows that to destroy that presumption, the appropriate course of action after the sale of a vehicle is for the seller to remove the registration plate and the certificates of registration and insurance from the automobile. In this case, Mrs. Williams failed to do so. A reasonable inference can be made that Williams voluntarily remained the insuring registrant of the Pontiac, as evidenced by the testimony and by allowing Preece to take possession and operate the vehicle on a public highway with her plate attached and with her certificates of insurance and registration in the glove compartment. Moreover, Mrs. Williams' failure to retain title to the automobile did not excuse her compliance with any other legislative requirements she may have had under the no-fault insurance act. As the registrant of a vehicle she permitted to be operated upon a public highway, Mrs. Williams was required by the act to provide residual liability insurance on the vehicle under the threat of criminal sanctions. In this limited context, Mrs. Williams' insurable interest was not contingent upon title of ownership to the automobile but, rather, upon personal pecuniary damage created by the no-fault statute itself. Thus, we reject Allstate's argument that Mrs. Williams, as the registrant of the Pontiac, had no "insurable interest" in the vehicle because she was no longer the title holder. . . .

In short, because she voluntarily remained the insuring registrant of the automobile, Mrs. Williams must be taken to have complied with the compulsory insurance statute whether she intended to or not. Our conclusion is supported by the overriding, strong public policy and the Legislature's mandate that vehicles not be operated on Michigan's highways without personal protection insurance, property protection insurance, and residual liability insurance. [*Id.* at 660-662 (citations omitted).]

The parties also cite *Allstate Ins Co v State Farm Mut Auto Ins Co*, 230 Mich App 434; 584 NW2d 355 (1998). In *Allstate*, the plaintiffs were husband and wife. The wife was injured when the car in which she was a passenger was struck by a Buick LaSabre driven by Bruce Walsh. Only hours before the accident, Walsh had purchased the car from Charles Hinton, Jr. Hinton not only turned over possession of the car to Walsh, but also provided a receipt of sale and removed his license plate, registration, and certificate of insurance from the car. *Id*. at 435. Walsh had placed his own license plate on the car, but had failed to obtain insurance. Allstate, the plaintiffs' insurer, denied coverage on the theory that Walsh was covered under Hinton's insurance through State Farm. State Farm argued that Hinton was "no longer the owner or registrant of the vehicle" once he removed the license plate, registration, and proof of insurance from the vehicle. *Id*. at 436. Allstate brought a declaratory judgment action to determine whether Allstate or State Farm was liable. The trial court granted summary disposition in favor of State Farm. *Id*. In affirming the trial court's order, this Court noted that "a 'named insured' must have an insurable interest to support a valid automobile liability insurance policy." *Id*. at 440. Unlike the seller of the vehicle in *Clevenger*, Hinton did nothing to intimate that he was voluntarily remaining the registrant of the car; rather,

> Hinton did exactly what the Supreme Court suggested a seller do; he removed his license plate, registration, and certificate of insurance from the vehicle before giving Walsh possession. These actions, in conjunction with the bona fide sale of the vehicle, destroyed Hinton's status as owner and as registrant. Unlike *Clevenger*, there simply are no facts from which we could infer that Hinton "voluntarily remained the insuring registrant." Thus, at the time of the accident, Hinton had no remaining interest in

the vehicle, he had no insurable interest, and the State Farm liability policy covering the LeSabre was simply void. [*Id.* at 440-441.]

In a footnote, this Court further noted:

Allstate argues that Hinton remained the registrant for an indefinite period after the sale. According to Allstate, in order to cast off his status as registrant, Hinton was required to cancel the registration with the Secretary of State or wait for the registration to expire. We find no authority for this proposition. Reading the applicable provisions of the vehicle code together, it is clear that the owner of a vehicle is responsible for registering it. See MCL 257.222-257.224; MSA 9.1922-9.1924 (instructing that the registration certificate and registration plate be delivered to the owner of the vehicle). If the owner transfers the title to the vehicle, she is required to remove the registration plates and transfer them, or retain them for transfer to another vehicle. MCL 257.233(1); MSA 9.1933(1). The code also makes it clear that the purchaser or transferee is responsible for obtaining a new certificate of title and registration certificate for the purchased vehicle. MCL 257.234; MSA 9.1934. However, the purchased vehicle is exempt from the registration and certificate of title provisions of the vehicle code for three days immediately following transfer of the title. MCL 257.216[*l*]; MSA 9.1916[*l*]. Implicit in this legislative scheme is the idea that a seller who complies with the statutory requirements by removing the registration plate, registration certificate, and certificate of insurance from the vehicle, is no longer a registrant of the vehicle. In *Clevenger*, the Supreme Court simply recognized that a person who transfers the title to a vehicle and allows the new owner to drive the vehicle away with her registration plate, registration certificate, and certificate of insurance, voluntarily remains the registrant of the vehicle. [*Id.* at 441 n 7.]

MCL 257.233(9) states that the "effective" date of transfer of the title or the interest in the vehicle is the date of "execution" of either the application for title or

the assignment of the certificate of title. Curler's testimony that he obtained title to the motorcycle days before the accident was in direct contrast with the documentary evidence, which indicated that the "purchase date" was June 18, 2006, one day after the accident. The date appears on both the certificate of title as well as the application for a Michigan vehicle title. It is unclear whether Shreve actually signed the certificate of title before the accident or after the accident. In any event, even if Shreve had signed the certificate of title without dating it on or about June 14, 2006, *Clevenger* compels a conclusion that Shreve remained the registrant of the motorcycle at the time of Curler's accident. While Shreve may have canceled his policy of insurance on the motorcycle, there is no evidence that the cancellation, which took place three months before the sale, was done in anticipation of the sale of the motorcycle; rather, it appears that Shreve canceled the policy merely because he had no intention to use the motorcycle at that time. Moreover, while Shreve apparently removed the certificates of registration and insurance from the motorcycle before he relinquished possession of the motorcycle, the fact remains that Shreve failed to remove his unexpired license plate from the motorcycle and, as such, "[a] reasonable inference can be made that [Shreve] voluntarily remained the insuring registrant . . . ." *Clevenger*, 443 Mich at 660-661. Shreve's insurer, State Farm, was therefore obligated to pay personal protection insurance benefits in this case.

Reversed. As the prevailing party, plaintiff may tax costs. MCR 7.219.

JANSEN, P.J., and WILDER and K. F. KELLY, JJ., concurred.