# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* SPEARS, Minors.

FOR PUBLICATION
March 19, 2015
9:00 a.m.

No. 320584
Leelanau Circuit Court
Family Division
LC No. 09-007999-NA

Before: RIORDAN, P.J., and MARKEY and WILDER, JJ.

PER CURIAM.

Appellant, Grand Traverse Band of Ottawa and Chippewa Indians (the "tribe"), appeals by leave granted the circuit court's order denying its request to transfer adoption proceedings to the tribal court pursuant to § 7 of Michigan's Indian Family Preservation Act (the "MIFPA"), MCL 712B.1 *et seq*. We conclude that the circuit court committed error warranting reversal in denying the tribe's request to transfer these proceedings to the tribal court under MCL 712B.7(5). The statute only permits the circuit court to deny a transfer request in two instances, and the circuit court improperly construed the statue to give it greater authority to deny a transfer. We therefore reverse and remand for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

This case began in 2010 when the Department of Human Services (DHS) petitioned the circuit court to take jurisdiction over the minors under MCL 712A.2 on the basis of alleged abuse and neglect. The court took jurisdiction over the minors in August 2010, and in September 2010, the minors' mother requested that the court transfer the case to the tribal court. The circuit court notified the tribe of the proceedings in November 2010, but the tribe responded that the minors were not members or eligible for tribal membership. The DHS filed a supplemental petition in November 2011 seeking the termination of the parental rights of the minors' mother.

In December 2011, the tribe filed a notice of intervention, stating that the minors were, in fact, enrolled members or eligible for membership. The tribe stated that this determination was made possible after adoption records regarding the minors' mother were unsealed and provided to the tribe's membership office. The minors were enrolled as members in February 2012. On February 13, 2012, the minors' mother filed a motion to dismiss the supplemental petition for noncompliance with the Indian Child Welfare Act (ICWA), 25 USC 1902 *et seq*. The mother also moved to transfer the case to the tribal court, which the circuit court granted but the tribal court denied the transfer, stating in part, that it would not be in the best interests of the minors.

-1-

On April 6, 2012, the minors' mother voluntarily released her parental rights to the minors. And, on April 18, 2012, following a hearing, the circuit court entered an order terminating the parental rights of the minors' father.

The minors' foster parents, respondents Tim Donn and Anne Donn, with whom the minors had been residing for several years, and the minors' paternal grandparents in Missouri each wished to adopt the minors. The court ordered that the placement of the minors remain with the Donns until the Michigan Children's Institute (MCI), through its agent, Bethany Christian Services, had completed its assessment and made a recommendation for adoptive placement. The tribe favored adoption with the minors' paternal grandparents.

On December 6, 2013, the MCI recommended adoptive placement with the Donns, who filed a petition for adoption on December 13, 2013. The tribe filed a motion to transfer the proceedings to its tribal court on December 23, 2013. The tribe also filed a motion in the tribal court to accept the transfer. The minors' attorney and guardian ad litem filed a recommendation in the circuit court to deny the requested transfer to the tribal court, stating there was good cause to not transfer based on the length of time the children had been in placement, the late stage of the proceedings, and the amount of time it would take to appoint and inform a new guardian ad litem in the tribal court regarding the lengthy background of the proceedings.

The circuit court held a hearing on February 6, 2014 regarding the tribe's motion to transfer. The court denied the request due to the advanced stage of the case, noting that the tribal court had already denied a transfer once on the basis that it was not in the best interests of the minors and that nothing had changed since then other than the adoption recommendation. The circuit court also concluded a transfer would not be in the best interests of the children.

The circuit court also addressed the "good cause" requirement of MCL 712B.7(5) to deny the tribe's transfer request. The circuit court observed that the tribe did have a tribal court, MCL 712B.7(5)(a), but ruled that "undue hardship" of MCL 712B.7(5)(b) was not limited to the hardship imposed on witnesses to present evidence in the tribal court, explaining it found "clear and convincing evidence that hardship to the parties; to wit, the three children, would occur if this transfer were granted." The court noted that the minors were undergoing stress and that they needed permanency. Additionally, the court found that the minors had been out of a parent's home for nearly five years and should not be subjected to any more stress in that regard.

On February 7, 2014, the circuit court entered its order denying the tribe's motion to transfer for the reasons stated on the record. The court also stayed all proceedings, including its order denying a transfer to tribal court, pending the exhaustion of appellate remedies.

## II. ANALYSIS

### A. STANDARD OF REVIEW

Statutory interpretation is a question of law that this Court reviews de novo. *In re Morris*, 491 Mich 81, 97; 815 NW2d 62 (2012). Any factual determinations of the lower court are reviewed for clear error. *Id.*; MCR 2.613(C).

When interpreting a statute, a court's primary goal is to ascertain and effectuate the intent of the Legislature. *Titan Ins Co v State Farm Mut Auto Ins Co*, 296 Mich App 75, 83; 817 NW2d 621 (2012). The intent of the Legislature is found in the terms of the statute, giving its words their plain and ordinary meaning. *Id*.; *In re Kostin Estate*, 278 Mich App 47, 57; 748 NW2d 583 (2008). Nontechnical "words and phrases shall be construed and understood according to the common and approved usage of the language . . . ." MCL 8.3a. Where a word used in a statute is undefined, a dictionary may be consulted to discern its common meaning. *Echelon Homes, LLC v Carter Lumber Co*, 472 Mich 192, 196; 694 NW2d 544 (2005). Courts must enforce clear statutory language as written. *Id*.

"The Legislature is presumed to be aware of all existing statutes when enacting a new statute." *Hughes v Almena Twp*, 284 Mich App 50, 626 771 NW2d 453 (2009). When statutes relate to the same subject or share a common purpose they are *in pari materia* and must be read together as one law, even if the statutes contain no reference to one another and were enacted on different dates. *Id*.; *Titan Ins Co*, 296 Mich App at 84.

## B. DISCUSSION

We begin our review of the MIFPA by looking at the legal background in which it was enacted. First, we examine federal law regarding Indian child welfare. Our Supreme Court summarized the legislative history of the ICWA:

> In 1978, Congress enacted [the Indian Child Welfare Act, 25 USC 1901 *et seq.* ("ICWA")] in response to growing concerns over "abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." Senate hearings conducted between 1974 and 1978 considered the harm of these child welfare practices, not only to the Indian children and their parents, but also to the Indian tribes. [*In re Morris*, 491 Mich at 97-98, quoting *Mississippi Band of Choctaw Indians v Holyfield*, 490 US 30, 32; 109 S Ct 1597; 104 L Ed 2d 29 (1989).]

When it enacted the ICWA, Congress declared that it was establishing "*minimum Federal standards* for the removal of Indian children from their families and the placement of such children in foster or adoptive homes" in order to "protect the best interests of Indian children and promote the stability and security of Indian tribes and families[.]" 25 USC 1902 (emphasis added). The ICWA specifically defines "child custody proceeding" to include those concerning the foster care and adoptive placement of Indian children, 25 USC 1903(1), and provides that tribal courts have presumptive and concurrent jurisdiction with state courts over such proceedings when Indian children, such as the minors in this case, reside outside an Indian reservation and are not wards of the tribal court, 25 USC 1911(b). See *Holyfield*, 490 US at 36 ("Section 1911(b) . . . creates concurrent but presumptively tribal jurisdiction in the case of children not domiciled on the reservation"). The statute, 25 USC 1911(b), provides:

> In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause

to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: *Provided*, that such transfer shall be subject to declination by the tribal court of such tribe.

The ICWA does not define "good cause" sufficient for a state court to deny a proper request to transfer an Indian child placement proceeding to a tribal court but the Bureau of Indian Affairs has issued guidelines commenting on the question. See Bureau of Indian Affairs, *Guidelines for State Courts; Indian Child Custody Proceedings*, 44 Fed Reg No. 228, 67591, § C.3 (November 26, 1979). According to the BIA guidelines,

(a) Good cause not to transfer the proceeding exists if the Indian child's tribe does not have a tribal court as defined by the Act to which the case can be transferred.

(b) Good cause not to transfer the proceeding may exist if any of the following circumstances exists:

(i) The proceeding was at an advanced stage when the petition to transfer was received and the petitioner did not file the petition promptly after receiving notice of the hearing.

(ii) The Indian child is over twelve years of age and objects to the transfer.

(iii) The evidence necessary to decide the case could not be adequately presented in the tribal court without undue hardship to the parties or the witnesses.

(iv) The parents of a child over five years of age are not available and the child has had little or no contact with the child's tribe or members of the child's tribe.

(c) Socio-economic conditions and the perceived adequacy of tribal or Bureau of Indian Affairs social services or judicial systems may not be considered in a determination that good cause exists.

(d) The burden of establishing good cause to the contrary shall be on the party opposing the transfer. [*Id*.]

BIA guidelines also comment on the timeliness of a request to transfer a child custody proceeding to a tribal court:

While the Act permits intervention at any point in the proceeding, it does not explicitly authorize transfer requests at any time. Late interventions do not have nearly the disruptive effect on the proceeding that last minute transfers do. A case that is almost completed does not need to be retried when intervention is permitted. The problems resulting from late intervention are primarily those of

-4-

the intervenor, who has lost the opportunity to influence the portion of the proceedings that was completed prior to intervention.

Although the Act does not explicitly require transfer petitions to be timely, it does authorize the court to refuse to transfer a case for good cause. When a party who could have petitioned earlier waits until the case is almost complete to ask that it be transferred to another court and retried, good cause exists to deny the request.

Timeliness is a proven weapon of the courts against disruption caused by negligence or obstructionist tactics on the part of counsel. If a transfer petition must be honored at any point before judgment, a party could wait to see how the trial is going in state court and then obtain another trial if it appears the other side will win. Delaying a transfer request could be used as a tactic to wear down the other side by requiring the case to be tried twice. The Act was not intended to authorize such tactics and the "good cause" provision is ample authority for the court to prevent them. [BIA guidelines at 67590, § C.1 Commentary.]

Further, the BIA guidelines discuss undue hardship to the parties or the witnesses, § C.3(b)(iii), as a factor for finding good cause to deny a transfer by quoting the House Report on the ICWA with respect to § 1911(b) and further commenting as follows:

"The subsection is intended to permit a State court to apply a modified doctrine of *forum non conveniens*, in appropriate cases, to insure that the rights of the child as an Indian, the Indian parents or custodian, and the tribe are fully protected." Where a child is in fact living in a dangerous situation, he or she should not be forced to remain there simply because the witnesses cannot afford to travel long distances to court.

Application of this criterion will tend to limit transfers to cases involving Indian children who do not live very far from the reservation. This problem may be alleviated in some instances by having the court come to the witnesses.

* * *

The timeliness of the petition for transfer, discussed at length in the commentary to section C.1, is listed as a factor to be considered. . . . Long periods of uncertainty concerning the future are generally regarded as harmful to the well-being of children. For that reason, it is especially important to avoid unnecessary delays in child custody proceedings. [BIA guidelines at 67591-67592, § C.3 Commentary.]

In 2010, the Michigan Court Rules were amended to reflect the requirements of the ICWA regarding petitions to transfer child custody proceedings to a tribal court and defined good cause not to transfer in reference to the BIA Guidelines. Specifically, MCR 3.905(C)(1), as adopted February 2, 2010, effective May 1, 2010, 485 Mich ccxxxiv, stated that "[i]n determining whether good cause not to transfer exists, the court shall consider the Bureau of Indian Affairs, Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed Reg No

228, 67590-67592, C.2-C.4 (November 26, 1979)." MCR 3.905(C)(1) was again amended on March 20, 2013, effective immediately, to reflect the Legislature's adoption of the MIFPA, which established standards for finding of good cause to deny a transfer of an Indian child custody proceeding to a tribal court. 493 Mich cciv-ccv. The 2013 version of MCR 3.905(C)(1) did not refer to the BIA guidelines and instead incorporated the criterion of MCL 712B.7(3)-(5):

> (1) If either parent or the Indian custodian or the Indian child's tribe petitions the court to transfer the proceeding to the tribal court, the court shall transfer the case to the tribal court unless either parent objects to the transfer of the case to tribal court jurisdiction or the court finds good cause not to transfer. When the court makes a good-cause determination under this section, adequacy of the tribe, tribal court, or tribal social services shall not be considered. A court may determine that good cause not to transfer a case to tribal court exists only if the person opposing the transfer shows by clear and convincing evidence that either of the following applies:

> (a) The Indian tribe does not have a tribal court.

> (b) The requirement of the parties or witnesses to present evidence in tribal court would cause undue hardship to those parties or witnesses that the Indian tribe is unable to mitigate. [MCR 3.905(C)(1); 493 Mich cciv-ccv.]

The Michigan Legislature enacted the MIFPA, MCL 712B.1 *et seq.*, which took effect on January 2, 2013, with the purpose of protecting "the best interests of Indian children and promot[ing] the stability and security of Indian tribes and families." MCL 712B.5(a). The best interests of Indian children are to be determined in child custody proceedings in consultation with the Indian child's tribe, in accordance with the IWCA, and the policy specified in the MIFPA. MCL 712B.5. The MIFPA addresses transfers to a tribal court of a child custody proceeding involving an Indian child not domiciled or residing within the reservation of the Indian child's tribe in MCL 712B.7(3):

> In any state court child custody proceeding, for an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer the proceeding to the Indian tribe's jurisdiction, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe, provided that the transfer is subject to declination by the tribal court of the Indian tribe.

Unlike the ICWA, the MIFPA provides clear and unambiguous standards for circuit courts when exercising their discretion regarding what constitutes "good cause to the contrary" when considering a petition to transfer an Indian child custody case to a tribal court. MCL 712B.7(5) provides:

> A court may determine that good cause not to transfer a case to tribal court exists *only if* the person opposing the transfer shows by clear and convincing evidence that *either* of the following applies:

> (a) The Indian tribe does not have a tribal court.

-6-

(b) The requirement of the parties or witnesses to present evidence in tribal court would cause undue hardship to those parties or witnesses that the Indian tribe is unable to mitigate.  [Emphasis added.]

Section 7(3) of MIFPA further provides: "When a court makes a good cause determination under this section, adequacy of the tribe, tribal court, or tribal social services shall not be considered." MCL 712B.7(4).  As noted already, MCR 3.905(C)(1) was amended to delete reference to the BIA guidelines and instead incorporates the requirements of the MIFPA.[1]

With this extended legal history, we address the issue presented in this case: May a circuit court find "good cause not to transfer a case to tribal court" under MCL 712B.7(5)(b) on the basis of "undue hardship" to an Indian child or children as a result of delay in the proceedings resulting from the transfer of a long-pending case to tribal court?  Stated otherwise, does MCL 712B.7(5)(b) permit a circuit court to deny a request to transfer an Indian child custody proceeding to a tribal court based on the timeliness of the request or the effect the transfer may have on the child's best interests?  However meritorious these considerations may be, we conclude that the plain language of MCL 712B.7(5)(b) does not permit the circuit court to consider either the timeliness of the request or its possible effect on the child's best interest in determining whether there exists "good cause not to transfer a case to tribal court."

In answering this question, our primary goal is to ascertain and effectuate the intent of the Legislature.  *Titan Ins Co*, 296 Mich App at 83.  In doing so, we must first examine "the most reliable evidence of the Legislature's intent, the language of the statute itself."  *Book-Gilbert v Greenleaf*, 302 Mich App 538, 541; 840 NW2d 743 (2013).  We must give effect to every word, phrase, and clause in a statute, and avoid a construction that would render part of the statute surplusage or nugatory.  *Id*.  Thus, we ascertain the intent of the Legislature from the terms of the statute, giving its words their plain and ordinary meaning.  *In re Kostin Estate*, 278 Mich App at 57.  Where the terms of a statute are clear and unambiguous, we must enforce the statute as written.  *Id*.; *Book-Gilbert*, 302 Mich App at 541.

MCL 712B.7(3) unambiguously provides that a court "shall" transfer proceedings to a tribal court unless either parent objects or there is "good cause to the contrary," and MCL 712B.7(5) unambiguously provides that good cause not to transfer a case to tribal court exists "only if," by clear and convincing evidence, one or two circumstances exist.  And because there is no dispute that a tribal court exists, MCL 712B.7(5)(a), the sole issue is whether the circuit court properly concluded that "[t]he requirement of the parties or witnesses to present evidence in tribal court would cause undue hardship to those parties or witnesses that the Indian tribe is unable to mitigate" under MCL 712B.7(5)(b).

---

[1] MCR 3.807(B)(2)(a), adopted February 2, 2010 and effective May 1, 2010, was worded identically to MCR 3.905(C)(1), incorporating the BIA guidelines.  See 485 Mich ccxxxi.  MCR 3.807(B)(2)(a) was also amended after the enactment of the MIFPA to eliminate reference to the BIA guidelines and incorporate the requirements of the MIFPA using language identical to the 2013 version of MCR 3.905(C)(1).  See 493 Mich ccii-cciii.

By its plain language, good cause to not transfer an Indian child custody proceeding to a tribal court under MCL 712B.7(5)(b) has three components. First, there must be an undue hardship on the parties or witnesses that will be required to present evidence in the tribal court.[2] See MCL 712B.7(5)(b) (stating "[t]he requirement of the parties or witnesses to present evidence in tribal court would cause undue hardship to *those* parties or witnesses") (emphasis added). Second, the undue hardship must stem from the requirement to present evidence in the tribal court. See MCL 712B.7(5)(b) (mandating that "[t]he requirement of the parties or witnesses to present evidence *would cause* undue hardship") (emphasis added). Third, the Indian tribe must be unable to mitigate the undue hardships caused by the requirement of the parties or witnesses present evidence in the tribal court. MCL 712B.7(5)(b).

In ruling that there was good cause not to transfer the proceedings to the tribal court, the circuit court ignored each of the criterion of MCL 712B.7(5)(b). First, the circuit court based its decision on an undue hardship to the minors without determining whether the minors had any requirement to present evidence in the tribal court. The circuit court also did not identify any other parties or witnesses that would be required to present evidence in the tribal court. And the circuit court failed to explain why the tribal court would be unable to mitigate the anticipated undue hardships. Moreover, the circuit court did not relate the anticipated undue hardship to the requirement to present evidence in the tribal court. Instead, the court ruled that it would give MCL 712B.7(5)(b) a "wider" interpretation, allowing it to consider the timeliness of the request and the minors' bests interests. We have no doubt that the circuit court was motivated by its understanding of what would be in the minors' best interests. Nevertheless, when the Legislature fails to address a concern in the statute with a specific provision, a court cannot insert a provision simply because it would have been wise for the Legislature to do so. *Book-Gilbert*, 302 Mich App at 542. However wise it may have been for the Legislature to provide that there is good cause not to transfer a case to a tribal court when the transfer request is made at an advanced stage of the proceeding or when a transfer would negatively affect a minor's best interests, the Legislature chose to define "good cause" using different criteria than considered in the BIA guidelines. We must enforce the unambiguous language of MCL 712B.7(5)(b) as written. *Book-Gilbert*, 302 Mich App at 541; *In re Kostin Estate*, 278 Mich App at 57.

Although the BIA guidelines provide separately that good cause not to transfer a case to a tribal court may exist if a request to transfer is made at "an advanced stage . . . and the petitioner did not file the petition promptly after receiving notice of the hearing," BIA guidelines, at 67591, § C.3(b)(i), the Michigan Legislature chose not to include timeliness of the request for transfer as a basis for finding good cause under MCL 712B.7(5). Instead, the Michigan Legislature decided

---

[2] We note that MCR 3.903(A)(19)(b) defines "party" to include the "petitioner, child, respondent, and parent, guardian, or legal custodian in a protective proceeding." We also observe that MCL 712B.7(6), MCR 3.807(B)(3) and MCR 3.905(D) all extend the right to intervene in an Indian child custody proceeding to the Indian child. "In any state court child custody proceeding, *an Indian child*, the Indian custodian of the child, and the Indian child's tribe have a right to intervene at any point in the child custody proceeding." MCL 712B.7(6) (emphasis added).

-8-

to impose a more exacting standard than provided in the ICWA's "minimum Federal standards," 25 USC 1902, by specifying that good cause not to transfer exists "*only if*" (1) "[t]he Indian tribe does not have a tribal court," or (2) "[t]he requirement of the parties or witnesses to present evidence in tribal court would cause undue hardship to those parties or witnesses that the Indian tribe is unable to mitigate." MCL 712B.7(5) (emphasis added).

Further, the BIA guidelines consider the timeliness of a request to transfer in part because the ICWA permits Indian tribes to intervene in state child custody proceedings at any time, but do not explicitly permit them to request transfers at any time. BIA guidelines, at 67590, § C.1. Compare 25 USC 1911(c) (permitting intervention in state court proceedings "at any point in the proceeding") with 25 USC 1911(b) (requiring transfers in the absence of good cause to the contrary or an objection by either parent, without specifying when transfer requests may or may not be made). But unlike the ICWA, Michigan Court Rules expressly provide that "[a] petition to transfer may be made *at any time* in accordance with MCL 712B.7(3)." MCR 3.807(B)(2)(d); MCR 905(C)(4) (emphasis added). See e.g., *In re NV*, 744 NW2d 634, 638 (Iowa, 2008) (finding that the Iowa legislature, when it adopted the Iowa version of the ICWA, included the undue hardship provision of the BIA guidelines but not the provision dealing with the timeliness of a transfer request).

Finally, although the Donns argue that the circuit court's decision should be affirmed because the tribal court waived its right to accept a transfer by denying a prior transfer request, they present no authority supporting the position that a tribal court can waive its jurisdiction at all, let alone by merely denying a prior request. Accordingly, we find this argument has been abandoned. See *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012) (holding than an appellant abandons an argument made with only superficial treatment and little or no citation of supporting authority). Further, our Court Rules broadly provide that "[a] petition to transfer may be made at any time . . .," MCR 3.802(2)(d); MCR 905(C)(4), and respondents point to no authority limiting this right.

We reverse and remand for further proceedings consistent with this opinion. Because a question of public policy is involved, no taxable costs may be assessed under MCR 7.219. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ Kurtis T. Wilder