*In re* SPEARS

Docket No. 320584. Submitted January 7, 2015, at Grand Rapids. Decided March 19, 2015, at 9:00 a.m.

The Department of Human Services (DHS) filed a petition in Leelanau Circuit Court Juvenile Division to take jurisdiction over three minors because of alleged abuse and neglect. The minors' mother requested that the proceedings be transferred to the tribal court of the Grand Traverse Band of Ottawa and Chippewa Indians (the tribe). The tribe refused the transfer because the minors were not members of the tribe and were not eligible for membership in the tribe. The DHS subsequently filed a supplemental petition to terminate the mother's parental rights. A month after the DHS filed its supplemental petition, and more than one year after the circuit court took jurisdiction over the minors, the tribe filed a notice of intervention based on its finding that the minors were indeed eligible for membership in the tribe, a fact discovered after the mother's adoption records were unsealed. The minors' mother filed a motion to dismiss the DHS's supplemental petition for noncompliance with the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq.* She also filed a motion to transfer the proceedings to tribal court. The circuit court, Larry J. Nelson, J., granted the mother's motion, but the tribal court again declined the transfer, in part because it would not be in the minors' best interests. The mother ultimately and voluntarily released her parental rights to the minors, and following a hearing, the circuit court terminated the father's parental rights to the minors. Adoption proceedings followed the terminations. The minors' foster parents, with whom the minors had been living for several years, wished to adopt the minors, as did the minors' paternal grandparents. The tribe favored the minors' paternal grandparents for adoption, and the Michigan Children's Institute's agent, Bethany Christian Services, recommended that the foster parents be permitted to adopt the minors. The foster parents filed a petition to adopt the minors, after which the tribe moved to transfer the adoption proceedings to the tribal court. The minors' attorney and guardian ad litem filed a motion asking the circuit court to deny the transfer to the tribal court, stating that there was good cause not to transfer

the proceedings because of the length of time the minors had been in placement and the late stage of the proceedings. The circuit court reasoned that there was good cause not to transfer the proceedings to the tribal court because the statutory grounds necessary to deny a motion to transfer also extended to any hardship caused to the minors if the proceedings were transferred. The circuit court concluded that clear and convincing evidence showed that a transfer would cause the minors undue stress and hardship, and the circuit court denied the motion to transfer the proceedings to the tribal court. The circuit court stayed the proceedings, including its order denying the transfer, pending the exhaustion of appellate remedies. The Grand Traverse Band of Ottawa and Chippewa Indians appealed the circuit court's denial of its motion to transfer the proceedings.

The Court of Appeals *held*:

The circuit court erred by denying the tribal court's motion to transfer the proceedings to tribal court. The governing statute, MCL 712B.7(5), requires the circuit court to transfer the proceedings unless a parent objects to the transfer, or one of two other circumstances is present. A circuit court is permitted to deny a request to transfer proceedings to the tribal court if (1) the tribe does not have a tribal court, or (2) the tribal court is unable to mitigate an undue hardship caused to the parties or witnesses who are required to present evidence in the tribal court. In this case, the circuit court improperly interpreted MCL 712B.7(5) and impermissibly expanded its authority to deny a transfer request. The circuit court was not allowed by statute to consider whether the minors themselves would suffer undue hardship if the proceedings were transferred to tribal court. In addition, the circuit court failed to identify any party or witness who would suffer undue hardship if required to present evidence in tribal court.

Reversed and remanded.

*Matthew J. Feil* for Grand Traverse Band of Ottawa and Chippewa Indians.

*Brott, Settles & Brott, PC* (by *Wilson D. Brott*), for Tim and Anne Donn.

*Joseph T. Hubbell*, Prosecuting Attorney, for Leelanau County.

Before: RIORDAN, P.J., and MARKEY and WILDER, JJ.

PER CURIAM. Appellant, Grand Traverse Band of Ottawa and Chippewa Indians (the tribe), appeals by leave granted the circuit court's order denying its request to transfer adoption proceedings to the tribal court pursuant to § 7 of the Michigan Indian Family Preservation Act (MIFPA), MCL 712B.1 *et seq.* We conclude that the circuit court committed error warranting reversal under MCL 712B.7(5) by denying the tribe's request to transfer these proceedings to the tribal court. The statute only permits the circuit court to find good cause not to transfer in two instances, and the circuit court improperly construed the statute to give it greater authority to deny a transfer. We therefore reverse and remand for further proceedings consistent with this opinion.

### I. FACTUAL BACKGROUND

This case began in 2010 when the Department of Human Services (DHS) petitioned the circuit court to take jurisdiction over the minors under MCL 712A.2 on the basis of alleged abuse and neglect. The circuit court took jurisdiction over the minors in August 2010, and in September 2010, the minors' mother requested that the circuit court transfer the case to the tribal court. The circuit court notified the tribe of the proceedings in November 2010, and the tribe responded that the minors were not members of the tribe nor were they eligible for tribal membership. The DHS filed a supplemental petition in November 2011 seeking termination of the parental rights of the minors' mother.

In December 2011, the tribe filed a notice of intervention, stating that the minors were, in fact, enrolled members of the tribe or eligible for tribal membership.

This determination was made possible after adoption records regarding the minors' mother were unsealed and provided to the tribe's membership office. The minors were enrolled as members of the tribe in February 2012. On February 13, 2012, the minors' mother filed a motion to dismiss the supplemental petition for noncompliance with the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq.* The mother also filed a motion to transfer the case to the tribal court, which the circuit court granted. However, the tribal court declined the transfer, stating in part that the transfer would not be in the best interests of the minors.

On April 6, 2012, the minors' mother voluntarily released her parental rights to the minors. And on April 18, 2012, following a hearing, the circuit court entered an order terminating the parental rights of the minors' father.

The minors' foster parents, respondents Tim Donn and Anne Donn, with whom the minors had been residing for several years, wished to adopt the minors. The minors' paternal grandparents in Missouri also wished to adopt the minors. The circuit court ordered that the minors remain with the Donns until the Michigan Children's Institute (MCI), through its agent, Bethany Christian Services, completed its assessment and recommended an adoptive placement. The tribe favored the minors' paternal grandparents for adoption of the minors.

On December 6, 2013, the MCI recommended adoptive placement with the Donns, who filed a petition for adoption on December 13, 2013. The tribe filed a motion on December 23, 2013, to transfer the proceedings to its tribal court. The tribe also moved the tribal court to accept the transfer. The minors' attorney and

guardian ad litem recommended that the circuit court deny the requested transfer to the tribal court, stating that there was good cause not to transfer based on the length of time the children had been in placement, the late stage of the proceedings, and the amount of time it would take to appoint a new guardian ad litem in the tribal court and then to inform him or her of the lengthy background of the proceedings.

The circuit court held a hearing on February 6, 2014, regarding the tribe's motion to transfer. The circuit court denied the request due to the advanced stage of the case, noting that the tribal court had already once denied a transfer on the basis that a transfer was not in the best interests of the minors. The circuit court further noted that nothing had changed since the tribal court's denial, with the exception of MCI's adoption recommendation. The circuit court also concluded a transfer would not be in the best interests of the children.

The circuit court addressed the "good cause" defined in MCL 712B.7(5) that was required to deny the tribe's transfer request. The circuit court observed that the tribe did have a tribal court, MCL 712B.7(5)(a), but ruled that the "undue hardship" of MCL 712B.7(5)(b) was not limited to the hardship imposed on witnesses to present evidence in the tribal court. The circuit court explained that it found "clear and convincing evidence that hardship to the parties; to wit, the three children, would occur if this transfer were granted." The circuit court noted that the minors were undergoing stress and that they needed permanency. Additionally, the circuit court found that the minors had been out of a parent's home for nearly five years and should not be subjected to any more stress in that regard.

On February 7, 2014, the circuit court entered its order denying the tribe's motion to transfer for the reasons stated on the record. The circuit court also stayed all proceedings, including its order denying a transfer to tribal court, pending the exhaustion of appellate remedies.

## II. ANALYSIS

### A. STANDARD OF REVIEW

Statutory interpretation is a question of law that this Court reviews de novo. *In re Morris*, 491 Mich 81, 97; 815 NW2d 62 (2012). Any factual determinations of the lower court are reviewed for clear error. *Id.*; MCR 2.613(C).

When interpreting a statute, a court's primary goal is to ascertain and effectuate the intent of the Legislature. *Titan Ins Co v State Farm Mut Auto Ins Co*, 296 Mich App 75, 83; 817 NW2d 621 (2012). The intent of the Legislature is found in the terms of the statute, giving its words their plain and ordinary meaning. *Id.*; *In re Kostin Estate*, 278 Mich App 47, 57; 748 NW2d 583 (2008). Nontechnical "words and phrases shall be construed and understood according to the common and approved usage of the language . . . ." MCL 8.3a. Where a word used in a statute is undefined, a dictionary may be consulted to discern the word's common meaning. *Echelon Homes, LLC v Carter Lumber Co*, 472 Mich 192, 196; 694 NW2d 544 (2005). Courts must enforce clearly expressed statutory language as written. *Id.*

"The Legislature is presumed to be aware of all existing statutes when enacting a new statute." *Hughes v Almena Twp*, 284 Mich App 50, 66; 771 NW2d 453 (2009). "Statutes that relate to the same subject or

share a common purpose are *in pari materia* and must be read together as one law, even if they contain no reference to one another and were enacted on different dates." *Titan Ins Co*, 296 Mich App at 84.

### B. DISCUSSION

We begin our review of the MIFPA by looking at the legal background in which it was enacted. First, we examine federal law regarding Indian child welfare. Our Supreme Court summarized the legislative history of the ICWA:

> In 1978, Congress enacted [the Indian Child Welfare Act, 25 USC 1901 *et seq*.] in response to growing concerns over "abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." Senate hearings conducted between 1974 and 1978 considered the harm of these child welfare practices, not only to the Indian children and their parents, but also to the Indian tribes. [*In re Morris*, 491 Mich at 97-98, quoting *Mississippi Band of Choctaw Indians v Holyfield*, 490 US 30, 32; 109 S Ct 1597; 104 L Ed 2d 29 (1989).]

When it enacted the ICWA, Congress declared that it was establishing *"minimum Federal standards* for the removal of Indian children from their families and the placement of such children in foster or adoptive homes" in order to "protect the best interests of Indian children and to promote the stability and security of Indian tribes and families . . . ." 25 USC 1902 (emphasis added). The ICWA specifically defines "child custody proceeding" to include those proceedings concerning the foster care and adoptive placements of Indian children as well as proceedings involving the termination of parental rights. 25 USC 1903(1). Tribal courts have presumptive and concurrent jurisdiction with

state courts over such proceedings when Indian children, such as the minors in this case, reside outside an Indian reservation and are not wards of the tribal court. See 25 USC 1911(b); *Holyfield*, 490 US at 36 ("Section 1911(b) . . . creates concurrent but presumptively tribal jurisdiction in the case of children not domiciled on the reservation."). 25 USC 1911(b) states:

> In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: *Provided*, that such transfer shall be subject to declination by the tribal court of such tribe.

The ICWA does not define "good cause" sufficient for a state court to deny a proper request to transfer an Indian child placement proceeding to a tribal court but the Bureau of Indian Affairs (BIA) has issued guidelines commenting on the question. See Bureau of Indian Affairs, *Guidelines for State Courts; Indian Child Custody Proceedings*, 44 Fed Reg 67591, § C.3 (November 26, 1979).[1] According to the BIA guidelines as they existed at the time of these proceedings,

> (a) Good cause not to transfer the proceeding exists if the Indian child's tribe does not have a tribal court as defined by the Act to which the case can be transferred.
>
> (b) Good cause not to transfer the proceeding may exist if any of the following circumstances exists:

---

[1] The BIA's Guidelines for State Courts have been updated since the events in this case occurred. See 80 Fed Reg 10146 (February 25, 2015). This opinion refers only to the version of the guidelines in effect during these proceedings—those published on November 26, 1979.

(i) The proceeding was at an advanced stage when the petition to transfer was received and the petitioner did not file the petition promptly after receiving notice of the hearing.

(ii) The Indian child is over twelve years of age and objects to the transfer.

(iii) The evidence necessary to decide the case could not be adequately presented in the tribal court without undue hardship to the parties or the witnesses.

(iv) The parents of a child over five years of age are not available and the child has had little or no contact with the child's tribe or members of the child's tribe.

(c) Socio-economic conditions and the perceived adequacy of tribal or Bureau of Indian Affairs social services or judicial systems may not be considered in a determination that good cause exists.

(d) The burden of establishing good cause to the contrary shall be on the party opposing the transfer. [*Id.*]

With regard to the timeliness of a request to transfer a child custody proceeding to a tribal court, the commentary to § C.1 of the BIA guidelines made the following observation:

While the Act permits intervention at any point in the proceeding, it does not explicitly authorize transfer requests at any time. Late interventions do not have nearly the disruptive effect on the proceeding that last minute transfers do. A case that is almost completed does not need to be retried when intervention is permitted. The problems resulting from late intervention are primarily those of the intervenor, who has lost the opportunity to influence the portion of the proceedings that was completed prior to intervention.

Although the Act does not explicitly require transfer petitions to be timely, it does authorize the court to refuse to transfer a case for good cause. When a party who could have petitioned earlier waits until the case is almost

complete to ask that it be transferred to another court and retried, good cause exists to deny the request.

Timeliness is a proven weapon of the courts against disruption caused by negligence or obstructionist tactics on the part of counsel. If a transfer petition must be honored at any point before judgment, a party could wait to see how the trial is going in state court and then obtain another trial if it appears the other side will win. Delaying a transfer request could be used as a tactic to wear down the other side by requiring the case to be tried twice. The Act was not intended to authorize such tactics and the "good cause" provision is ample authority for the court to prevent them. [BIA Guidelines at 67590, § C.1 Commentary.]

Further, the BIA guidelines discuss undue hardship to the parties or the witnesses, § C.3(b)(iii), as a factor for finding good cause to deny a transfer by quoting the House Report on the ICWA with respect to § 1911(b) and further commenting as follows:

"The subsection is intended to permit a State court to apply . . . a modified doctrine of *forum non conveniens*, in appropriate cases, to insure that the rights of the child as an Indian, the Indian parents or custodian, and the tribe are fully protected." Where a child is in fact living in a dangerous situation, he or she should not be forced to remain there simply because the witnesses cannot afford to travel long distances to court.

Application of this criterion will tend to limit transfers to cases involving Indian children who do not live very far from the reservation. This problem may be alleviated in some instances by having the court come to the witnesses.

\* \* \*

The timeliness of the petition for transfer, discussed at length in the commentary to section C.1, is listed as a factor to be considered. . . . Long periods of uncertainty concerning the future are generally regarded as harmful

to the well-being of children. For that reason, it is especially important to avoid unnecessary delays in child custody proceedings. [BIA Guidelines at 67591-67592, § C.3 Commentary.]

In 2010, the Michigan Court Rules were amended to reflect the requirements of the ICWA regarding petitions to transfer child custody proceedings to a tribal court. The amended court rules also defined good cause not to transfer in reference to the BIA Guidelines. Specifically, MCR 3.905(C)(1), as adopted February 2, 2010, effective May 1, 2010, 485 Mich ccxxxiv, stated that "[i]n determining whether good cause not to transfer exists, the court shall consider the Bureau of Indian Affairs, Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed Reg No 228, 67590-67592, C.2-C.4 (November 26, 1979)." MCR 3.905(C)(1) was again amended on March 20, 2013, effective immediately, to reflect the Legislature's adoption of the MIFPA, which established standards for finding good cause to deny the transfer of an Indian child custody proceeding to a tribal court. The 2013 version of MCR 3.905(C)(1) did not refer to the BIA guidelines and instead incorporated the criteria of MCL 712B.7(3)-(5):

(1) If either parent or the Indian custodian or the Indian child's tribe petitions the court to transfer the proceeding to the tribal court, the court shall transfer the case to the tribal court unless either parent objects to the transfer of the case to tribal court jurisdiction or the court finds good cause not to transfer. When the court makes a good-cause determination under this section, adequacy of the tribe, tribal court, or tribal social services shall not be considered. A court may determine that good cause not to transfer a case to tribal court exists only if the person opposing the transfer shows by clear and convincing evidence that either of the following applies:

(a) The Indian tribe does not have a tribal court.

(b) The requirement of the parties or witnesses to present evidence in tribal court would cause undue hardship to those parties or witnesses that the Indian tribe is unable to mitigate. [493 Mich cciv-ccv.]

The Michigan Legislature enacted the MIFPA, MCL 712B.1 *et seq.*, which took effect on January 2, 2013, with the purpose of protecting "the best interests of Indian children and promot[ing] the stability and security of Indian tribes and families." MCL 712B.5(a). The best interests of Indian children are to be determined in child custody proceedings in consultation with the Indian child's tribe, in accordance with the ICWA, and the policy specified in the MIFPA. MCL 712B.5. In MCL 712B.7(3), the MIFPA addresses transfers to a tribal court of a child custody proceeding involving an Indian child not domiciled or residing within the reservation of the Indian child's tribe:

> In any state court child custody proceeding, for an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer the proceeding to the Indian tribe's jurisdiction, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe, provided that the transfer is subject to declination by the tribal court of the Indian tribe.

Unlike the ICWA, the MIFPA provides circuit courts with a clear and unambiguous standard for determining what constitutes "good cause to the contrary" when considering a petition to transfer an Indian child custody case to a tribal court. MCL 712B.7(5) provides:

> A court may determine that good cause not to transfer a case to tribal court exists *only if* the person opposing the transfer shows by clear and convincing evidence that *either* of the following applies:

(a) The Indian tribe does not have a tribal court.

(b) The requirement of the parties or witnesses to present evidence in tribal court would cause undue hardship to those parties or witnesses that the Indian tribe is unable to mitigate. [Emphasis added.]

MCL 712B.7(4) of the MIFPA further provides: "When a court makes a good cause determination under this section, adequacy of the tribe, tribal court, or tribal social services shall not be considered." As already noted, MCR 3.905(C)(1) was amended to delete reference to the BIA guidelines and instead incorporate the requirements of the MIFPA.[2]

With this extended legal history, we address the issue presented in this case: May a circuit court find "good cause not to transfer a case to tribal court" under MCL 712B.7(5)(b) on the basis of "undue hardship" to an Indian child or children as a result of delay in the proceedings due to the transfer of a long-pending case to tribal court? Stated otherwise, does the "undue hardship" provision in MCL 712B.7(5)(b) permit a circuit court to deny a request to transfer an Indian child custody proceeding to a tribal court based on the timeliness of the request or the effect the transfer may have on the child's best interests? However meritorious these considerations may be, we conclude that the plain language of MCL 712B.7(5)(b) does not permit the circuit court to consider either the timeliness of the request or its possible effect on the child's best inter-

---

[2] Before its amendment in 2013, MCR 3.807(B)(2)(a), adopted February 2, 2010, and effective May 1, 2010, was worded identically to the version of MCR 3.905(C)(1) that incorporated the BIA guidelines. See 485 Mich ccxxxi. MCR 3.807(B)(2)(a) was also amended after the enactment of the MIFPA, and using language identical to the 2013 version of MCR 3.905(C)(1), eliminated reference to the BIA guidelines and incorporated the requirements of the MIFPA. See 493 Mich ccii-cciii.

ests in determining whether there exists "good cause not to transfer a case to tribal court."

In answering the question above, our primary goal is to ascertain and effectuate the intent of the Legislature. *Titan Ins Co*, 296 Mich App at 83. In doing so, we must first examine "the most reliable evidence of the Legislature's intent, the language of the statute itself." *Book-Gilbert v Greenleaf*, 302 Mich App 538, 541; 840 NW2d 743 (2013). We must give effect to every word, phrase, and clause in a statute, and we must avoid a construction that would render part of the statute surplusage or nugatory. *Id*. Thus, we ascertain the intent of the Legislature from the terms of the statute, giving the terms their plain and ordinary meaning. *In re Kostin Estate*, 278 Mich App at 57. Where the terms of a statute are clear and unambiguous, we must enforce the statute as written. *Id*.; *Book-Gilbert*, 302 Mich App at 541.

MCL 712B.7(3) unambiguously provides that a court "shall" transfer proceedings to a tribal court unless either parent objects or there is "good cause to the contrary." Further, MCL 712B.7(5) unambiguously provides that good cause not to transfer a case to tribal court exists "only if" clear and convincing evidence shows that one of two circumstances exist. And because there is no dispute that a tribal court exists, MCL 712B.7(5)(a), the sole issue is whether the circuit court properly concluded that "[t]he requirement of the parties or witnesses to present evidence in tribal court would cause undue hardship to those parties or witnesses that the Indian tribe is unable to mitigate" under MCL 712B.7(5)(b).

By its plain language, good cause not to transfer an Indian child custody proceeding to a tribal court under MCL 712B.7(5)(b) has three components. First, there

must be an undue hardship on the parties or witnesses that will be required to present evidence in the tribal court.[3] See MCL 712B.7(5)(b), which states that "[t]he requirement of the parties or witnesses to present evidence in tribal court would cause undue hardship to *those* parties or witnesses . . . ." (Emphasis added.) Second, the undue hardship must stem from the requirement to present evidence in the tribal court. See *id.*, which mandates that "[t]he requirement of the parties or witnesses to present evidence . . . *would cause* undue hardship . . . ." (Emphasis added.) Third, the Indian tribe must be unable to mitigate the undue hardship caused by the requirement of the parties or witnesses to present evidence in the tribal court. *Id.*

In ruling that there was good cause not to transfer the proceedings to the tribal court, the circuit court ignored each of the criteria in MCL 712B.7(5)(b). First, the circuit court based its decision on an undue hardship to the minors without determining whether the minors were required to present evidence in the tribal court. The circuit court also did not identify any other parties or witnesses that would be required to present evidence in the tribal court. And the circuit court failed to explain why the tribal court would be unable to mitigate any anticipated undue hardship. Moreover, the circuit court did not relate the anticipated undue hardship to the requirement of presenting evidence in the tribal court. Instead, the circuit court ruled that it

---

[3] We note that MCR 3.903(A)(19)(b) defines "party" to include the "petitioner, child, respondent, and parent, guardian, or legal custodian in a protective proceeding." We also observe that MCL 712B.7(6), MCR 3.807(B)(3), and MCR 3.905(D) all extend the right to intervene in an Indian child custody proceeding to the Indian child. "In any state court child custody proceeding, *an Indian child*, the Indian custodian of the child, and the Indian child's tribe have a right to intervene at any point in the child custody proceeding." MCL 712B.7(6) (emphasis added).

would give MCL 712B.7(5)(b) a "wider" interpretation, allowing it to consider the timeliness of the request and the minors' best interests. We have no doubt that the circuit court was motivated by its understanding of what would be in the minors' best interests. Nevertheless, "[w]hen the Legislature fails to address a concern in the statute with a specific provision, the courts cannot insert a provision simply because it would have been wise of the Legislature to do so . . . ." *Book-Gilbert*, 302 Mich App at 542. However wise it may have been for the Legislature to provide that there is good cause not to transfer a case to a tribal court when the transfer request is made at an advanced stage of the proceeding or when a transfer would negatively affect a minor's best interests, the Legislature chose to define "good cause" using criteria different from the criteria considered in the BIA guidelines. We must enforce the unambiguous language of MCL 712B.7(5)(b) as written. *Book-Gilbert*, 302 Mich App at 541; *In re Kostin Estate*, 278 Mich App at 57.

Although the BIA guidelines provide separately that good cause not to transfer a case to a tribal court may exist if a request to transfer is made "at an advanced stage . . . and the petitioner did not file the petition promptly after receiving notice of the hearing," BIA Guidelines at 67591, § C.3(b)(i), the Michigan Legislature chose not to include timeliness of the request for transfer as a basis for finding good cause under MCL 712B.7(5). Instead, the Michigan Legislature decided to impose a more exacting standard than the one provided in the ICWA's "minimum Federal standards," 25 USC 1902, by specifying that good cause not to transfer exists *only if* (1) "[t]he Indian tribe does not have a tribal court," or (2) "[t]he requirement of the parties or witnesses to present evidence in tribal court

would cause undue hardship to those parties or witnesses that the Indian tribe is unable to mitigate." MCL 712B.7(5)(a)-(b).

Further, the BIA guidelines consider the timeliness of a request to transfer in part because the ICWA permits Indian tribes to intervene in state child custody proceedings at any time, but does not explicitly permit them to request transfers at any time. BIA Guidelines at 67590, § C.1 Commentary. Compare 25 USC 1911(c) (permitting intervention in state court proceedings "at any point in the proceeding") with 25 USC 1911(b) (requiring transfers in the absence of good cause to the contrary or an objection by either parent, without specifying when transfer requests may or may not be made). But unlike the ICWA, Michigan Court Rules expressly provide that "[a] petition to transfer may be made *at any time* in accordance with MCL 712B.7(3)." MCR 3.807(B)(2)(d); MCR 3.905(C)(4) (emphasis added). See e.g., *In re NV*, 744 NW2d 634, 638 (Iowa, 2008) (finding that the Iowa legislature, when it adopted the Iowa version of the ICWA, included the undue hardship provision of the BIA guidelines but not the provision dealing with the timeliness of a transfer request).

Finally, although the Donns argue that the circuit court's decision should be affirmed because the tribal court waived its right to accept a transfer by declining a prior transfer request, they present no authority supporting the position that a tribal court can waive its jurisdiction at all, let alone by merely declining a prior request. Accordingly, we find this argument has been abandoned. See *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012) (holding that an appellant abandons an argument made with only superficial treatment and

little or no citation of supporting authority). Further, our court rules broadly provide that "[a] petition to transfer may be made at any time . . . ," and respondents point to no authority limiting this right. MCR 3.807(B)(2)(d); MCR 3.905(C)(4).

We reverse and remand for further proceedings consistent with this opinion. Because a question of public policy is involved, no taxable costs may be assessed under MCR 7.219. We do not retain jurisdiction.

RIORDAN, P.J., and MARKEY and WILDER, JJ., concurred.