# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* JONES/LEHMANN, Minors.

FOR PUBLICATION
June 28, 2016
9:00 a.m.

No. 330945
Kalamazoo Circuit Court
Family Division
LC No. 2011-000003-NA

Before: MURPHY, P.J., and SAAD and BORRELLO, JJ.

PER CURIAM.

Respondent mother appeals as of right the trial court's order terminating her parental rights to the minor children, S.L. and C.J., pursuant to MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), (c)(*ii*) (other conditions implicating jurisdiction exist and were not rectified), (g) (failure to provide proper care or custody), (j) (reasonable likelihood of harm if child returned to parent's home), and (*l*) (parental rights to another child previously terminated).[1] We affirm with respect to S.L. and conditionally reverse and remand for further proceedings relative to C.J.

Respondent argues that the trial court and the Department of Health and Human Services (DHHS) failed to make sufficient efforts to determine whether C.J. is an Indian child under the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq.*, and the Michigan Indian Family Preservation Act (MIFPA), MCL 712B.1 *et seq.* This Court has observed that the MIFPA was designed to protect the best interests of Indian children and to promote the security and stability of Indian families and tribes and that "[t]he ICWA and the MIFPA each establish various substantive and procedural protections where an Indian child is involved in a child protective

---

[1] This Court recently declared that MCL 712A.19b(3)(*l*) "violates the due process protections of the federal and state constitutions[.]" *In re Gach*, __ Mich App __, __; __ NW2d __ (2016); slip op at 8. Regardless, only one statutory ground need be established in order to support termination of parental rights. MCL 712A.19b(3); *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). And, on appeal, respondent does not directly challenge the trial court's findings concerning the statutory grounds.

-1-

proceeding." *In re England*, __ Mich App __, __; __ NW2d __ (2016); slip op at 2-3, citing MCL 712B.5(a) and *In re Spears*, 309 Mich App 658, 669; 872 NW2d 852 (2015).[2]

Under the ICWA, in 25 USC 1912(a), the United States Congress provided, in pertinent part:

> In any involuntary proceeding in a State court, where the court *knows or has reason to know* that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary[.] [Emphasis added.]

With respect to the interpretation of the "reason to know" language in 25 USC 1912(a), our Supreme Court in *In re Morris*, 491 Mich 81, 108, 108 n 18; 815 NW2d 62 (2012), construed it broadly, determining that the notice requirement of 25 USC 1912(a) is triggered when there exists "sufficiently reliable information of virtually any criteria on which [tribal] membership might be based[,]" including "information *suggesting* that the child, *a parent of the child*, or members of a parent's family are tribal members[.]" (Emphasis added.) "Once sufficient indicia of Indian heritage are presented to give the court a reason to believe the child is or *may be* an Indian child, resolution of the child's and parent's tribal status requires notice to the tribe or, when the appropriate tribe cannot be determined, to the Secretary of the Interior." *Id.* at 108 (emphasis added); see also *In re Johnson*, 305 Mich App 328, 330-332; 852 NW2d 224 (2014) (notice requirement of ICWA triggered where court had information that child's grandmothers were Native Americans).

---

[2] An "Indian child" is defined in the ICWA as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 USC 1903(4). "[O]nly the Indian tribe can determine its membership." *In re Morris*, 491 Mich 81, 100; 815 NW2d 62 (2012). Under the MIFPA, an "Indian child" is defined as "an unmarried person who is under the age of 18 and is either . . . (*i*) [a] member of an Indian tribe [or] (*ii*) [e]ligible for membership in an Indian tribe as determined by that Indian tribe." MCL 712B.3(k). "The definition of 'Indian child' in MIFPA is similar to that in ICWA, but does not require the child who is eligible for membership to also be the biological child of a member of an Indian tribe." *In re KMN*, 309 Mich App 274, 287; 870 NW2d 75 (2015).

The MIFPA, which was enacted pursuant to 2012 PA 565 and made effective January 2, 2013, contains language similar to that found in 25 USC 1912(a), providing in MCL 712B.9(1) as follows:

> In a child custody proceeding,[3] if the court *knows or has reason to know* that an Indian child is involved, the petitioner shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending child custody proceeding and of the right to intervene. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, notice shall be given to the secretary[4] in the same manner described in this subsection. The secretary has 15 days after receipt of notice to provide the requisite notice to the parent or Indian custodian and the tribe.  [Emphasis added.]

In the MIFPA, the Legislature expressly set forth a nonexclusive list of circumstances that effectively trigger the notification mandate found in subsection (1), providing in subsection (4) of MCL 712B.9:

> Circumstances under which a court, the department, or other party to a child custody proceeding has reason to believe a child involved in a child custody proceeding is an Indian include, but are not limited to, any of the following:
>
> * * *
>
> (b) Any public or state-licensed agency involved in child protection services or family support has *discovered information that suggests* that the child is an Indian child.
>
> * * *
>
> (e) An officer of the court involved in the proceeding has knowledge that the child *may be* an Indian child.  [Emphasis added.]

In the instant case, multiple petitions had been filed and numerous hearings had been conducted, spanning several years.  In January 2011, respondent had indicated to the trial court that C.J.'s father "might be Native American," although she could not identify any particular

---

[3] A "child custody proceeding" includes removal actions, MCL 712B.3(b)(*i*), and "[a]ny action resulting in the termination of the parent-child relationship[,]" MCL 712B.3(b)(*ii*).   The definitional section of the MIFPA, MCL 712B.3, was amended pursuant to 2016 PA 26 and made effective May 30, 2016; however, that amendment did not substantively alter any of the statutory definitions discussed in this appellate opinion, assuming the amendment is even generally applicable to these proceedings.

[4] The term "Secretary" as used in the MIFPA refers to the "Secretary of the Interior."  MCL 712B.3(u), as amended by 2016 PA 26 (Legislature amended provision but merely to capitalize the title of the officeholder).

tribal affiliation.[5]  Nothing came of the matter, and the petition pending at that time was dismissed, with the court terminating its jurisdiction.  In December 2012, the trial court inquired into Native American heritage, and the child protective services (CPS) worker indicated that there was no Indian heritage or tribal connection.  However, the petition that was pending at that particular time pertained solely to S.L., not C.J, so the response by the CPS worker is irrelevant to our analysis, as there is no argument before us that S.L. may be an Indian child.[6]  In November 2013 and in relation to a new petition that did encompass C.J., respondent informed the trial court that C.J.'s father "might have a little Indian in him."  She further asserted that C.J.'s father "says he might be Cherokee[,] [b]ut he's not sure."  The trial court indicated that the issue needed to be explored, noting that an effort should be made to obtain some cooperation from C.J.'s father on the matter.

At a pretrial conference in December 2013, a DHHS worker informed the trial court that she had spoken to C.J.'s father, who advised her that he "thinks there may be" Native American heritage in his family, but he was simply unsure.  The DHHS worker told the trial court that she directed C.J.'s father to gather family names for her, so that she could submit paperwork checking on tribal membership or eligibility.  The trial court ordered further investigation on the issue, along with ordering full cooperation by C.J.'s father.  Thereafter, in late December 2013, the DHHS worker sent a notice to the Department of the Interior (DOI), Bureau of Indian Affairs, in an effort to determine C.J.'s enrollment or eligibility status for enrollment in an Indian tribe.[7]  The notice only included the names, birthdates, and addresses of respondent, C.J., and her father.  In January 2014, the DOI responded in writing to the inquiry, stating that there was "insufficient information to determine tribal affiliation" at that time.  At a review hearing in September 2014, the trial court noted that no exhibit had yet been filed with respect to the inquiry into Native American heritage, and respondent reiterated her belief that C.J.'s father may be Cherokee.  At the next hearing in November 2014, the notice sent to the DOI and the DOI's response were admitted.  There is no further discussion or document in the record pertaining to Native American heritage or whether C.J. might be an Indian child.

We first conclude that, for purposes of the ICWA, there was sufficiently reliable information – of virtually any criteria – of tribal membership or eligibility for membership, where the trial court had information obtained from respondent and C.J.'s father suggesting that he might have Native American heritage.  *In re Morris*, 491 Mich at 108 and 108 n 18; *In re Johnson*, 305 Mich App at 332-333.  We reach this conclusion because the Supreme Court made

---

[5] C.J.'s father's parental rights were also eventually terminated, but are not at issue in this appeal. He was generally uncooperative and did not participate in services.  We note that a parent "of an Indian child cannot waive the separate and independent ICWA rights of an Indian child's tribe[.]"  *In re Morris*, 491 Mich at 89.

[6] For this reason, we reject the prosecutor's appellate argument that the CPS worker's statements in December 2012 reflected resolution of the question regarding Indian heritage.

[7] There is no indication in the record whether the DHHS worker had been able to procure any further information from C.J.'s father regarding any family ties to an Indian tribe.

abundantly clear in *In re Morris* that if we are to err, we are to err on the side of caution, protecting the interests of Indian children, families, and tribes and avoiding potential later disruptions in the child's life. *In re Morris*, 491 Mich at 88-89, 106-107. Additionally, for purposes of the MIFPA, we conclude that the DHHS discovered information that "suggest[ed]" that C.J. is an Indian child, MCL 712B.9(4)(b), and that the trial court and counsel had knowledge that C.J. "*may be* an Indian child[,]" MCL 712B.9(4)(e) (emphasis added).[8] Accordingly, we hold that the notice requirements of both 25 USC 1912(a) and MCL 712B.9(1) were triggered in this case.

The record reflects that notice was sent to the Secretary or DOI, but we note that such notice only becomes obligatory when "the identity or location of the parent or Indian custodian and the tribe cannot be determined." 25 USC 1912(a); MCL 712B.9(1). The first step in the process is to send the appropriate notification to "the parent or Indian custodian *and* the Indian child's tribe," if determinable. 25 USC 1912(a); MCL 712B.9(1) (emphasis added). The trial court and DHHS were familiar with the identity and location of respondent and C.J.'s father, who were both fully apprised of the pending proceedings. Regarding the identity of the Indian tribe, respondent, although unsure, thought that C.J.'s father might have Cherokee heritage, and, as noted earlier, she told the trial court that C.J.'s father informed her that "he might be Cherokee." Given that the DHHS and the trial court had information that at least suggested the possibility of Cherokee heritage, absent mention of any other potential tribal affiliation, notice should have been sent to the Cherokee tribe for purposes of 25 USC 1912(a) and MCL 712B.9(1). There is no indication in the record that such notice was sent. Consistent with the remedy set forth in *In re Morris*, 491 Mich at 114-123, and given that we reject below respondent's argument concerning the children's best interests, we conditionally reverse the order of termination with respect to C.J. and remand for compliance with the notification requirements in the ICWA and MIFPA. Considering that there is no argument or indication in the record that S.L. is an Indian child, there is no basis to conditionally reverse the termination of parental rights as they pertain to S.L.

Moreover, aside from 25 USC 1912(a) and MCL 712B.9(1), respondent also presents an argument under MCL 712B.9(3), which provides:

> The department shall actively seek to determine whether a child at initial contact is an Indian child. If the department is able to make an initial determination as to which Indian tribe or tribes a child brought to its attention may be a member, the department shall exercise due diligence to contact the

---

[8] The need to proceed cautiously in order to avoid the potential future disruption of lives is also apparent under the MIFPA, where it provides:

> Any Indian child who is the subject of any action for termination of parental rights under state law, any parent or Indian custodian from whose custody the child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate the action upon a showing that the action violated any provision of this section. [MCL 712B.15(5).]

Indian tribe or tribes in writing so that the tribe may verify membership or eligibility for membership. If the department is unable to make an initial determination as to which tribe or tribes a child may be a member, the department shall, at a minimum, contact in writing the tribe or tribes located in the county where the child is located and the secretary.

Given the multiple references in the record to possible Cherokee heritage, the DHHS had adequate information to make an "*initial* determination" that C.J. "*may* be a member" of the Cherokee tribe, implicating a duty to "exercise due diligence to contact" the Cherokee tribe "in writing so that the tribe may verify membership or eligibility for membership." MCL 712B.9(3) (emphasis added). This was not done. Furthermore, assuming that the DHHS was "unable to make [such] an initial determination" relative to the Cherokee tribe, there is no indication in the record, nor does the DHHS argue on appeal, that the tribe or tribes located in Kalamazoo County were given written notification, which is a minimal requirement under the final sentence in MCL 712B.9(3).[9] Indeed, the DHHS does not even present an appellant argument under MCL 712B.9(3), despite respondent's partial reliance on the provision. Accordingly, MCL 712B.9(3), along with 25 USC 1912(a) and MCL 712B.9(1), serves as a basis to order conditional reversal in regard to C.J. On remand, notice must be sent to the Cherokee tribe and, if one exists, to any tribe or tribes in Kalamazoo County.

Lastly, respondent challenges the trial court's finding that termination of her parental rights was in the children's best interests. The trial court must find by a preponderance of the evidence that termination is in the best interests of a child. MCL 712A.19b(5); *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). We review the trial court's decision for clear error. MCR 3.977(K); *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009). A finding is clearly erroneous if it leaves us with a definite and firm conviction that a mistake was made. *In re HRC*, 286 Mich App at 459. Factors to be considered include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). Further, we may also consider whether it is likely "that the child could be returned to her parents' home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012).

The trial court, in this case, did not clearly err by finding that termination of respondent's parental rights was in the children's best interests. Though respondent shared a bond with the children, her bond was outweighed by the children's need for safety, permanency, and stability. Respondent never obtained suitable housing during the course of the proceedings, nor could she meet her own economic or financial needs, let alone the needs of the children. These issues were longstanding, numerous services had been provided to no avail, and there was no indication that respondent would be able to rectify the problems in such time that the children could be returned to her in the foreseeable future. There were also serious concerns with respondent's history of

---

[9] We acknowledge that we do not know whether there are any Indian tribes located in Kalamazoo County. That matter will have to be explored on remand.

bringing inappropriate individuals—including men with criminal sexual histories—around her children.  Respondent failed to address this issue in counseling and minimized the matter throughout the proceedings.  Finally, even though the minor children were not in pre-adoptive placements, any further delay in providing them permanency by allowing respondent additional time to improve her situation was not in their best interests.  The trial court did not clearly err in finding that it was in the children's best interests to terminate respondent's parental rights.

We affirm with respect to the termination of respondent's parental rights as to S.L.  We conditionally reverse the order terminating respondent's parental rights in regard to C.J., and remand for further proceedings consistent with this opinion.  We do not retain jurisdiction.


/s/ William B. Murphy
/s/ Henry William Saad
/s/ Stephen L. Borrello